FOURNET, Justice.
 

 The Lake Front Land Company, Inc., having entered into a contract with the Louisiana Highway Commission and in pursuance thereof deposited in escrow with the Marine Bank & Trust Company of New Orleans, Louisiana, the 'sum of $50,000 in cash to pay for the construction of a muck canal and embankment of the proposed Hammond-New Orleans Highway along the southern shore of Lake Pontchartrain, instituted this suit against the Department of Highways as successor to the Louisiana Highway Commission to recover $50,000 worth of bonds substituted for the cash under a subsequent agreement on the ground that the sole consideration for the deposit, the completion of the Hammond-New Orleans Highway- and the resulting benefits to its land abutting the lake, has failed because the highway project has been abandoned.
 

 The defendant denied the plaintiff’s right to the bonds although it admitted that at the time this suit was filed on July 17, 1945, the highway contemplated in the agreement, had not been completed, contending that the condition under which the deposit was to be paid was not the completion of the highway, but, rather, the construction of the muck canal and embankment. Assuming the position of plaintiff in reconvention, the defendant averred it had’ fulfilled its obligation under the escrow agreement and prayed that it be declared the owner of the bonds. The defendant also prayed as a bar to plaintiff’s action the prescription of ten years under Article 3544 of the Revised Civil Code. There was judgment in the lower court in favor of the plaintiff and the defendant is appealing.
 

 On July 19, 1926, the plaintiff entered into a contract with the Louisiana High
 
 *11
 
 way Commission wherein it specifically declared “That in consideration of the benefits to be derived from a completed highway along the southern shore of Lake Pontchartrain * * * the Lake Front Land Company, Inc., does hereby place on deposit in the Marine Bank & Trust Company, New Orleans, Louisiana, the sum of Fifty Thousand ($50,000.00) Dollars, to be held in escrow for the completion of the 'muck canal and embankment of this section of highway known as Federal Aid Project' 156-B, 5.35 miles in length * Under the express terms of the agreement, the bank was directed to pay the $50,000 to the contractor doing the work upon receipt as the work progressed of monthly estimates approved by the state highway engineer for work actually accomplished. It appears, however, that the contractor never submitted the estimates to the escrow agent during the progress of the work and that the commission did not make any demand for payment or surrender of the money deposited in escrow until April 24, 1931, when, through its auditor, it made such demand in writing on the Canal Bank & Trust Company, the successor to the Marine Bank & Trust Company. By letter of May 1, 1931, the auditor also sent to the bank all monthly estimates and final estimates covering the work on the muck canal and embankment, as well as the resolution of the commission accepting the project as having been com'piéted.
 

 Counsel for the appellant concede, as they must, that if the funds on deposit had been actually delivered to the contractor in accordance with the escrow agreement, the plaintiff would have had a right to recover such funds from the highway commission upon its failure to complete the highway along the shore line as contemplated, but they contend that the commission became the owner, of the funds upon the completion of the canal and embankment and that the escrow agent was thereafter possessing the property for the commission as its agent and trustee and, having failed to institute this suit to recover the same within ten years, the plaintiff is now barred under Article 3544 of the Revised Civil Code to recover such money or its equivalent in bonds.
 

 The record does not show the reason for the escrow agent’s- non-delivery of the funds when demanded by the Highway Commission, whether it was because the work was not satisfactory or whether at that time it had become apparent, as the evidence now shows, that this canal and embankment as constructed, because of the nature of the terrain in that section, did not have the proper foundation to support the contemplated highway. The evidence does show that subsequent to such time, on January 6, 1933, by agreement between the parties, the instrument of July 19, 1926, was supplemented by authorizing the plaintiff,
 
 “without prejudice to any of the rights of the Land Company or the Commission,”
 
 
 *12
 

 to purchase with the
 
 $50,000 deposited in escrow $50,000 of par value highway bonds of the State of Louisiana and to deposit these bonds in lieu of the cash. In such agreement the bank was also authorized to deliver to the land company the coupons on such bonds as they matured and these coupons have ever since actually been collected by the land company, just as it had previous
 
 to
 
 that time collected the interest paid on the money deposited in the bank. The land company was also permitted to retain the difference between the $50,000 on deposit and the money required for the purchase of the bonds, approximately $7,-000. There is no question but that the proposed plan to build the Hammond-New Orleans Highway along this shore of the
 
 lake has now been abandoned as
 
 impractical. (Italics ours.)
 

 Whatever the reason for the non-delivery of the cash or its equivalent in bonds may have been, the defendant, by its own act, has not only acquiesced in the escrow agent’s failure to deliver the cash to it upon the demand made on April 24, 1931, but has also consented to the
 
 agent’s
 
 continued possession of the bonds substituted therefor by agreeing that the coupons from such bonds were to be paid to the land company, and while it was not stipulated in the agreement in so many words, we think that when all of the facts of the case are taken into consideration the conclusion is inescapable that such possession was to continue pending the final completion of the lake shore highway. Obviously the parties to the agreement entertained these same views, for as late as October 3, 1935, after the Canal Bank & Trust Company was placed in liquidation, the plaintiff and the defendant executed an instrument authorizing the transfer of this deposit to the National Bank of Commerce in New Orleans, in which instrument it was stipulated that such deposit would be held by the bank “in accordance with the terms and conditions set forth in the original contract executed on July 19, 1926,” as supplemented by the agreement of January 6, 1933, and that “this authorization is entered into without prejudice to ourselves or the rights of any other interested party or parties.” Thus the parties themselves by their own actions have shown that the .bonds were not being held by the escrow agent for the Highway Commission.
 

 It necessarily follows, therefore, that until the construction of the highway was officially abandoned or until it became apparent that such a highway was not to be
 
 completed, the plaintiff’s right to the
 
 possession of these bonds did not arise. From the evidence it appears that although the highway commission did officially abandon the construction of this highway in a formal report rendered in 1938, the plaintiff did not become apprised of such action until some time around the middle of 1943, and the prescription of ten years had not,
 
 *13
 
 therefore, run at the time this suit was instituted in 1945.
 

 For the reasons assigned, the judgment appealed from is affirmed.